USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/19/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ENRICO VACCARO, F.GREGORY DENEEN, and WILLIAM SLATER, on Behalf of themselves and all others similarly Situated,

      Plaintiffs

-against-

NEW SOURCE ENERGY PARTNERS L.P, KRISTIAN B. KOS, TERRY L. TOOLE, DIKRAN TOURIAN, RICHARD D. FINLEY, V. BRUCE THOMPSON, JOHN A. RABER, STIFEL, NICOLAUS & COMPANY, INC., ROBERY W. BAIRD & CO. INC., JANNEY MONTGOMERY SCOTT LLC, OPPENHEIMER & CO. INC., AND WUNDERLICH SECURITIES, INC.,

      Defendants.

----------------------------------------------------------x

OPINION AND ORDER

Class Action No. 15 CV 8954 (KMW)

KIMBA M. WOOD, District Judge:

  Plaintiffs, Enrico Vaccaro, F. Gregory Deneen, and William Slater, bring this putative class action lawsuit on behalf of all persons who purchased Series A Preferred Units from New Source Energy Partners L.P. ("New Source") pursuant to and/or traceable to the company's May 4, 2015 offering (the "Offering") of $40 million worth of its Series A Preferred Units. Plaintiffs have sued New Source, the individual defendants who served as officers or directors of New Source at the time of the Offering ("Individual Defendants"), and various firms that served as underwriters to

1

New Source in connection with the Offering ("Underwriter Defendants") (collectively "Defendants").

Plaintiffs have alleged violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), 77*o*. (AC ¶ 1 [Doc. No. 19]. Plaintiffs principally contend that Defendants made materially false and misleading statements in their Registration Statement and Prospectus filed in preparation for their May 2015 public offering. Specifically, plaintiffs allege that the documents omitted material information regarding ongoing cash flow problems stemming from both a legal dispute and the general downturn of the global oil market, causing severe financial losses to all class members. Defendants now move to dismiss the Amended Complaint ("AC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants attribute New Source's failure to severe downturn in the global oil market.

For the reasons explained below, the motion to dismiss is GRANTED as to all claims against Defendants. Plaintiffs are granted leave to re-plead their Complaint by January 19, 2017.

I. **BACKGROUND**

   a. **New Source and the Offering**

The following facts are drawn from Plaintiffs' Amended Complaint. New Source was founded in October of 2012 to acquire and own oil and natural gas properties in the United States. AC ¶ 2. It engaged in the development and production of onshore oil and natural gas properties that extended across east-central Oklahoma. *Id.* New Source also operated an oilfield services business. *Id.* In February 2013, in connection with an initial public offering, New Source entered into a development agreement with New Source Energy Corporation ("NSEC"), an energy

company, and New Dominion, an operator of oil and natural gas wells throughout Oklahoma. *Id.* ¶ 3. New Dominion and New Source subsequently entered into an agreement that called for the sale of certain assets (including oil and gas wells in Oklahoma) from NSEC to New Source, in exchange for limited partnership interests in the partnership. *Id.* ¶ 4. In addition, New Dominion was to pay New Source their *pro rata* share of production. *Id.* By early 2015, the relationship between New Dominion's co-founder, David Chernicky ("Chernicky"), and various New Source executives (the Individual Defendants) had gone sour. *Id.* ¶ 7. In January 2015, New Dominion and NSEC filed suit against New Source in Oklahoma State Court, alleging that New Source had made various company-related misrepresentations to Chernicky. *New Dominion LLC v. New Source Energy Partners LP*, Tulsa County Case No. CJ-2015-00123. New Source eventually countersued, alleging that New Dominion had withheld payment owed to New Source in violation of their agreement. AC ¶ 10.

After the litigation had commenced, New Source announced a public offering in an effort to replenish depleted cash flow. *Id.* ¶ 12. It offered $40 million worth of its Series A Preferred Units. *Id.* ¶ 13. On May 4, 2015, New Source released a Prospectus and Registration Statement in connection with the Offering ("Offering Documents"). *Id.* ¶ 12. In July of 2015, two months after the public offering, New Source's financial troubles worsened. The company announced that it was suspending its quarterly cash dividend to common unitholders. *Id.* ¶ 75. The price of its Series A units subsequently dropped to $13.10. *Id.* ¶ 76. The company reported a loss of $111 million during the second quarter of fiscal year 2015. *Id.* ¶ 77. New Source filed for bankruptcy in March of 2016. *Id.* ¶ 23.

Plaintiffs allege that Defendants were not forthcoming about New Source's rapidly deteriorating financial situation. They allege two major, material misrepresentations in the

Company's Offering Documents. Plaintiffs first argue that Defendants "completely failed to disclose the dispute New Source had been having with New Dominion," AC ¶ 18, and how that dispute (namely, New Dominion's withholding of revenue) was affecting and would continue to affect New Source's cash flow. Second, Plaintiffs allege that Defendants failed to disclose how the downturn in the global oil market was affecting and would continue to affect New Source's ability to pay dividends.

## II. LEGAL STANDARD

### a. Pleading Standard – Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the supporting factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff has failed to "nudge" a claim "across the line from conceivable to plausible," a district court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

The Court must accept as true all well-pleaded factual allegations in a complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss the Court is not limited to the complaint itself, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents

4

possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).[1]

If a plaintiff's Securities Act allegations sound in fraud, he must meet a heightened standard as outlined by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." The Second Circuit interprets this rule to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Although Rule 9(b) permits "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally[,]" a plaintiff is required to "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. FMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (quoting Fed. R. Civ. P. 9(b)).

### b. The Securities Act of 1933

"The Securities Act of 1933 was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors

---

[1] The Court takes judicial notice of the entirety of documents attached to the Declaration of Virginia F. Milstead in Support of Underwriter Defendants' Motion to Dismiss and the documents attached to the Declaration of Ari M. Berman in Support of Individual Defendants' Motion to Dismiss, on the ground that each is integral to Defendants' claims. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996); *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991). There is no dispute regarding the authenticity, accuracy, or relevance of these documents. *Cf. Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006) (noting that consideration of materials outside the complaint is permissible on a 12(b)(6) motion if the documents are integral to the complaint, it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and the relevance of the document is undisputed).

against fraud, and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1876).

i. **Section 11 and Section 12(a)(2)**

Plaintiffs bring their Section 11 claims against all Defendants named in their Complaint. Section 11 of the Securities Act provides that any signer, director of the issuer, preparing or certifying accountant, or underwriter may be liable if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The Section was designed to encourage disclosures pursuant to the Securities Act by "imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983).

Plaintiffs also bring their Section 12(a)(2) claim against the Issuer Defendant and the Underwriter Defendants. Section 12(a)(2) imposes liability under circumstances similar to those of Section 11, but on issuers or sellers of securities who mislead in a prospectus. 15 U.S.C. § 77*l*(a)(2). In other words, section 12(a)(2) provides a similar cause of action where the securities at issue were sold using prospectuses or oral communications containing material misstatements or omissions. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Defendants "may be liable under Section 12(a)(2) either for selling a security or for soliciting its purchase." *Id.* at 374.

Plaintiff can establish liability for Section 11 and 12(a)(2) violations by proving one of three bases—(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal obligation to disclose; (3) a material omission of information that is necessary to

prevent existing disclosures from being misleading. *Litwin v. Blackstone Group*, 634 F.3d 706, 715-16 (2d Cir. 2011).

Although claims under Sections 11 and 12(a)(2) must plead the materiality of the alleged misstatement or omission, plaintiffs need not allege scienter, reliance, or causation (unless their claims sound in fraud). *Rombach v. Chang,* 355 F.3d at 164, 169 n. 4 (2d Cir. 2004). Issuers are subject to strict liability, and other potential defendants under Sections 11 and 12(a)(2) may be held liable for mere negligence. *In re Morgan Stanley,* 592 F.3d at 359 (citing *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382 (1983)).

Because Sections 11 and 12(a)(2) are "Securities Act siblings with roughly parallel elements," *Id.* at 359, courts often analyze the two together. *See In re Fuwei Films Sec. Litig.,* 634 F.Supp. 2d 419, 438 (S.D.N.Y. 2009) (Sullivan, J.) (quoting *Lin v. Interactive Brokers Group, Inc.,* 574 F.Supp. 2d 408, 416 (S.D.N.Y. 2008) (McMahon, J.) ("Claims under Sections 11 and 12 are usually evaluated in tandem because if a plaintiff fails to plead a cognizable Section 11 claim, he or she will be unable to plead one under Section 12(a).").

### ii. Section 15

Plaintiffs bring their Section 15 claim against the named Individual Defendants, alleging that, because of their control over New Source's management policies, they are liable for the §§ 11 and 12(a)(2) violations. Section 15 of the Securities Act attaches liability to "[e]very person who, by or through stock ownership, agency, or otherwise, ... controls any person liable" under Sections 11 or 12 of the Securities Act. 15 U.S.C. § 77o. To state a violation of Section 15, a plaintiff must plead (1) an underlying primary violation of Sections 11 or 12 by the controlled

person; and (2) the defendant's control over the primary violator. *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *5–6 (S.D.N.Y. Feb.20, 2002) (Stein, J).

### c. Duty to Disclose

To succeed on a Section 11 or 12 claim, plaintiffs must first plead a duty to disclose.. Plaintiffs claim that Defendants had a duty to disclose this information pursuant to Section 303 of SEC Regulation S-K, which broadly governs disclosure requirements related to the SEC filings of public companies. Plaintiffs also cite 17 C.F.R. § 229.512(a)(1)(ii), which requires issuers of shelf offerings to continually amend their prospectuses "to reflect … any facts or events arising after the effective date of the registration statement … which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement."

Item 303 requires the disclosure of all "known trends … that have had or that the registrant reasonably expects will have a material … unfavorable impact on … revenues." Regulation S-K, Item 303. Instruction 3 to paragraph 303(a) provides that "[t]he discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition." 17 C.F.R. § 229.303(a) instruction 3. "A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition to results of operation." Management's Discussion and Analysis of Financial Condition and Results of Operations, Securities Act Release No. 6835, 54 Fed. Reg. 22427, 22429 (May 18, 1989).

Generally, "[t]he federal securities laws impose no obligation upon an issuer to disclose forward-looking information such as internal projections, estimates of future performance,

forecasts, budgets, and similar data." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1209 (1st Cir. 1996). See also *In re Donna Karan Int'l Secs. Litig.*, 1998 WL 637547, at *12 (E.D.N.Y. 1998) ("[P]laintiffs essentially seek to hold [the issuer] liable for failing to make projections concerning post-IPO ... costs. Sections 11 and 12(a)(2) do not require such forward-looking disclosures.").

However, Item 303 *does* require disclosure when a defendant has reason to believe that a known trend will materially affect its investments and revenues. The Second Circuit has addressed the scope of 303 disclosure recently, in *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706 (2d Cir. 2011) and *Panther Partners v. Ikanos Communications*, 681 F.3d 114 (2012). In those two cases the Court not only affirmed a duty to disclose known material trends, but also required defendants to disclose whether, and to what extent, that known trend, event or uncertainty might reasonably be expected to impact future revenues. *Panther Partners*, 681 F.3d at 121. Thus, "the mere identification of a trend is, in some cases, not sufficient disclosure." *In re Facebook IPO Securities and Derivative Litigation*, 986 F.Supp.2d 487, 510 (S.D.N.Y. 2013) (Sweet, J.).

### a. Materiality

Once plaintiffs have established that defendants had a duty to disclose the alleged information, they must also prove materiality. Generally, materiality is a mixed question of law and fact best left to the factfinder. *In re Cosi, Inc. Securities Litigation*, 379 F.Supp.2d 580, 587 (2005) (Koetl, J). A question of materiality may be decided as a matter of law on a motion to dismiss, however, if the alleged omission is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance." *Id.* (quoting *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 540-41 (2d Cir. 1996). In order for Plaintiffs to prevail, "[t]here must be a substantial likelihood that the disclosure of the omitted fact would have been

9

viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Litwin* at 717 (citing *Ganino*, 228 F.3d 154 (2d Cir. 2000).

When the omitted information alleged concerns a speculative trend or event, "the materiality of those events depends on a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001).

### III. DISCUSSION

#### a. New Source's Disclosures

Defendants made numerous disclosures related to the omissions Plaintiffs allege. New Source's prospectus contained seven pages of risk factors. (New Source Prospectus, Dated April 21, 2014 ("Prospectus"), attached at Ex. A to Declaration of Ari M. Berman in Support of the Individual Defendants' Motion to Dismiss the Amended Class Action Complaint). In addition to the statements made within the Offering Documents themselves, Defendants also incorporated by reference New Source's Form 10-K for fiscal year 2014, which was filed with the SEC on March 20, 2015. *Id.* Ex. B. It also incorporated by reference other documents that New Source had previously filed with the SEC. *Id.* The Annual Report also contained multiple pages of risk factors, many of which were also related to the omissions alleged in this Amended Complaint. Defendants note many of these statements in their Motion to Dismiss. The Court highlights a few here.

Defendants made various statements in the Offering Documents (or Documents Referenced by the Offering Documents) concerning New Source's legal dispute with New Dominion and how it was already affecting the company's financial condition:

- "[W]e are currently engaged in litigation with our contract operator and its affiliates [New Dominion], which has affected our exploration and production related cash flow." Ex. 2 at 42.

- The company reported that it was "currently engaged in litigation with New Dominion and its affiliates. Recently, New Dominion has withheld revenue otherwise payable to use for various reasons." *Id.* at 42.

Defendants also made clear that the New Dominion litigation could continue to affect the company's ability to pay dividends:

- "[T]he covenants contained in the agreements governing our outstanding indebtedness could limit our ability to borrow additional funds, dispose of assets, pay dividends and make certain investments." Ex. 2 at 57.

- "New Dominion serves as the operator for all of our properties. The successful operation of our exploration and production business depends on continued utilization of New Dominion's oil, natural gas, and NGL infrastructure and technical staff as the operator of our properties. Failure of New Dominion to perform its obligations could have a material adverse effect on our operations and our financial results." *Id.* at F-40.

- New Source "expected that the borrowing base under [its] credit facility will be reduced by approximately $24.0 million to approximately $60.0 million on May 8, 2015." Ex. 1 at 6.

Defendants also warned that the company's viability (and its cash flow) remained tied to the global oil market:

11

- "Commodity prices are volatile, and continued low levels of or further declines in oil, natural gas and NGL prices may adversely affect our business, financial condition or results of operations and our ability to meet our capital expenditure obligations and financial commitments." *Id.* at 38.

- "Historically, the markets for oil, natural gas, and NGL have been volatile, as demonstrated in the fourth quarter of 2014 and into 2015. These markets will likely continue to be volatile in the future." *Id.* at 50.

- "Based on expected lower commodity prices, higher production costs and less drilling activity, we estimate revenue, operating income and cash flow from operations for our exploration and production business will decline." *Id.* at 76.

Defendants also warned that such conditions could affect future ability to pay dividends:

- "Based on projected market conditions and lower commodity prices, we currently expect that we will not be in compliance with our current ratio covenant in certain future periods." Ex. 2 at 77, 89, F-25.

- "Based on expected lower commodity prices, higher production costs and less drilling activity, we estimate revenue, operating income and cash flow from operations for our exploration and production business will decline. As such, results for the year ended December 31, 2014 are not indicative of the results that can be expected for the year ended December 31, 2015." *Id* at 76.

- "If our revenues or the borrowing base under our revolving credit facility decrease as a result of lower oil, natural gas or NGL prices, operating difficulties, declines in reserves or for any other reason, all of which we experienced in the fourth quarter of 2014, we may have limited ability to obtain the capital necessary to sustain our

12

operations at current levels. If additional capital is needed, we may not be able to obtain debt or equity financing." *Id.* at 50.

### b. Section 11 and 12(a)(2) claims

#### i. Duty to Disclose

Plaintiffs have sufficiently pleaded that Defendants had a duty to disclose the alleged omitted information. Section 303 of Regulation S-K is clear that an issuer must disclose information that would materially affect revenues. Both ongoing costly litigation and the health of the global oil market are events that would reasonably affect New Source's revenue and overall financial condition. Furthermore, because Plaintiffs' claims do not sound in fraud, they need not prove scienter. Fed. R. Civ. P. 9(b)). Plaintiffs prevail on their claims if they merely plead that the Issuer Defendant omitted material information, and that the Underwriter Defendant negligently omitted that same material information. *In re Facebook Securities and Derivative Litigation*, 986 F.Supp 2d 487, 505 (2013) (Sweet, J.). "[T]he sole remaining issue" is whether the information Plaintiffs point to as omitted "[is] 'reasonably likely' to be material for the purpose of Item 303 and, in turn, for the purpose of Sections 11 and 12(a)(2)." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011).

#### ii. Materiality

Defendant's disclosures were as precise and as exhaustive as is required by Sections 11 and 12(a) of the Securities Act. Plaintiffs take issue with the extent and specific wording of the disclosures, but Defendants need not characterize the facts in the way the plaintiff prefers. See, e.g., *Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015) (Buchwald, J.) ("Nor were defendants' disclosures deficient because they failed to characterize [the facts] in a certain way . . . the

law is clear that companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures.").

Plaintiffs cite *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706 (2d Cir. 2011), and *Panther Partners v. Ikanos Communications, et. al*, 681 F.3d 114 (2d Cir. 2012), to support their claim that Defendants were obligated to provide further, more specific disclosure. But both of those cases are distinguishable from the facts at hand. In *Litwin*, Plaintiffs claimed that Blackstone's offering documents failed to disclose, among other things, the extent to which the downturn in the global real estate market would affect the company's earnings and stock price. 681 F.3d 114 (2d Cir. 2012). The Second Circuit Court of Appeals held in *Litwin* that Blackstone was required to disclose not only the existence of the downward trend in the real estate market, but also the *manner* in which that trend was to impact Blackstone's revenue. *Id.* However, Blackstone's disclosures were less forthcoming than the ones at issue here. Not only did Blackstone make no mention of a downturn in its real estate holdings, but it rather noted that "the real estate industry is … experiencing historically high levels of growth and liquidity driven by the strength of the U.S. economy…" Compl. 08 CV 3601 ¶ 125. Given that statement, the Court easily found its disclosures on the extent to which that trend affected the company's overall financial condition to be deficient. *Id.*

Similarly, in *Panther Partners*, the Second Circuit found defendant's disclosures regarding a product defect insufficient for failure to detail the manner in which the defect might impact the company's future revenues. *Panther Partners*, 681 F.3d at 120. Again, Ikanos's disclosures were less forthcoming than those made by New Source. Ikanos made no mention of a current design defect (even though it had full knowledge that one existed) and instead offered general language

that its products "frequently contain defects and bugs ... [that] could harm our ability to retain customers and attract new customers." 681 F.3d 114, 117 (2d Cir. 2012).[2]

Plaintiffs are right to note that the Offering Documents may not describe a trend or event as a mere future risk factor if the issuer has current knowledge of an adverse impact caused by that trend or event. ("The impact of the increase in mobile users on revenues was not alleged to be a mere uncertainty, but a trend Facebook knew was affecting its business revenues. ... The Company's purported risk warnings misleadingly represented that this revenue cut was merely possible when, in fact, it had already materialized." *Facebook IPO*, 96 F.Supp 2d at 511, 516). Similarly, "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Wilson v. Merrill Lynch & Co, Inc.*, 671 F.3d 120, 130 (2d Cir. 2011). But when disclosures are clear that current events both negatively affect, and could continue to negatively affect, business, such disclosures are not mere speculation concerning future risk. Issuers satisfy disclosure requirements under the Securities Act when they identify the current event or trend and its effect on the market, as well as provide a cautionary statement describing whether the company expects the event or trend to continue to affect revenues in the future.

Not only did New Source warn of the existence of the New Dominion litigation and of the volatility of the global oil market, but it also made clear that the lawsuit and the oil market *had already affected* the company's exploration and production-related cash flow. First, the Offering Documents made clear that New Source's lawsuit with New Dominion had already resulted in

---

[2] See also *In Re Facebook IPO, Inc. Securities and Derivative Litigation,* where the court found that Plaintiffs had sufficiently plead material omissions when Facebook made no mention in its Registration Statement of increased mobile usage affecting ad revenues (when it was aware of the trend), let alone an assessment of how it might impact the stock price in the future. 986 F.Supp.2d 487 (S.D.N.Y. 2013) (Sweet, J).

15

withholding of revenues. New Source stated that it was "currently engaged in litigation with our contract operator and its affiliates [New Dominion], which has *affected our* exploration and production related cash flow." Ex. 2 at 76. It also clarified that the negative financial effects of the lawsuit could persist, noting that a continued "[f]ailure of New Dominion to perform its obligations could have a material adverse effect on our operations and our financial results." *Id.* at F-40.

Defendants have also repeatedly emphasized that New Source's financial condition was, and would remain, tied to the health of the global oil market. New Source disclosed both the existence of this fact and the way in which the price of oil would affect its future cash flow and ability to pay dividends. It noted that the company was already experiencing the effects of a depressed oil market. It stated: "If our revenues or the borrowing base under our revolving credit facility decrease as a result of lower oil, natural gas or NGL prices, operating difficulties, declines in reserves or for any other reason, *all of which we experienced in the fourth quarter of 2014, we may have limited ability to obtain the capital necessary to sustain our operations at current levels.* If additional capital is needed, we may not be able to obtain debt or equity financing." *Id.* at 50 (emphasis added). More generally, it emphasized that "expected lower commodity prices" and "continued low levels of or further declines in oil, natural gas and NGL prices" would affect cash flow. *Id.* at 38 and 76. New Source also stated that "based on projected market conditions and lower commodity prices, we currently expect that we will not be in compliance with our current ratio covenant in certain future periods." *Id.* at 77.

Plaintiffs do not claim that Defendants completely failed to disclose information related to the New Dominion litigation and the global oil market. Rather, they claim that Defendants failed to describe with sufficient specificity precisely how these events were affecting, and would continue to affect, New Source's financial condition and ability to pay dividends. The Court

16

disagrees. Defendants are not required to "present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); See also *Rombach v. Chang,* 355 F.3d at 174 ("[p]eople in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future"). Furthermore, once a risk is disclosed, defendants "are not required to predict the precise manner in which risks will manifest themselves." *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444 (S.D.N.Y.) (Swain, J), quoting *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 588 (S.D.N.Y.1993) (Conner, J).

Defendants' numerous disclosures, taken collectively, ensure that Defendants adequately informed potential investors of both the current and future risks related to the Company's offering. In light of these disclosures, any further information Defendants could have possibly provided with regard to the New Dominion litigation or the global oil market would be unlikely to "significantly alter the 'total mix' of information made available" to investors, as is required to establish materiality. *Litwin* at 717 (citing *Ganino*, 228 F.3d 154 (2d Cir. 2000). Plaintiffs have failed to establish the materiality element required for a successful 11 or 12(a) claim under the Securities Act.

### c. Section 15 Claims

Plaintiffs' third cause of action must also be dismissed because they have not sufficiently alleged an underlying primary violation of the Securities Act. Control person liability under § 15 of the Securities Act is predicated on a primary violation of the Securities Act. *See Rombach v. Chang,* 355 F.3d 164, 177-78 (2d Cir.2004). Because the plaintiffs have failed to state a claim for any primary violation, the Plaintiff's Section 15 claim must also be dismissed. *See id.*

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion to Dismiss. Plaintiffs are given until January 19, 2017, to file an amended complaint, should they choose to do so. This Opinion resolves docket numbers 25 and 26.

        SO ORDERED.

DATED:    New York, New York
              December 19, 2016

                                          KIMBA M. WOOD
                                          United States District Judge