USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ENRICO VACCARO, F.GREGORY
DENEEN, and WILLIAM SLATER, on
behalf of themselves and all others similarly
situated,

         Plaintiffs,

-against-

NEW SOURCE ENERGY PARTNERS L.P.,
KRISTIAN B. KOS, TERRY L. TOOLE,
DIKRAN TOURIAN, RICHARD D.
FINLEY, V. BRUCE THOMPSON, JOHN
A. RABER, STIFEL, NICOLAUS &
COMPANY, INC., ROBERY W. BAIRD &
CO. INC., JANNEY MONTGOMERY
SCOTT LLC, OPPENHEIMER & CO. INC.,
AND WUNDERLICH SECURITIES, INC.,

         Defendants.

------------------------------------------------------------x

OPINION AND ORDER

Class Action No. 15 CV 8954 (KMW)

KIMBA M. WOOD, United States District Judge:

  This Opinion considers the Motion for Final Approval of the Class Action Settlement ("Approval Motion") and Motion for an Award of Attorneys' Fees and Expenses ("Attorneys' Fees Motion"), both filed by Lead Plaintiffs Enrico Vaccaro, F. Gregory Deneen, and William Slater ("Lead Plaintiffs"). The Court GRANTED both Motions at the Settlement Fairness Hearing held on November 20, 2017 for reasons stated at the hearing and elaborated more fully herein.

1

## I. Introduction and Procedural History

On October 21, 2015, Plaintiffs filed this lawsuit in connection with an offering of $40 million worth of Series A Preferred Units (the "Offering") from New Source Energy Partners, L.P. ("New Source").[1] Plaintiffs sued New Source, along with certain individuals who were officers or directors of New Source at the time of the Offering ("Individual Defendants"), and certain firms that were underwriters to New Source in connection with the Offering ("Underwriter Defendants") (collectively, "Defendants"). Plaintiffs allege that Defendants made materially false and misleading statements in various financial reports, including by allegedly failing to disclose issues regarding the incompetency, fraudulent conduct, and unreliability of New Source's contract operator, resulting in millions of dollars in damages and "curtailed" efforts to drill new oil wells. (Second Am. Compl., ECF No. 38 ¶¶ 1–12.) On March 29, 2016, this Court appointed Enrico Vaccaro, F. Gregory Deneen, and William Slater as Lead Plaintiffs, and approved Wolf Haldenstein Adler Freeman & Herz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel. (Order, ECF No. 15). The next day, New Source and its affiliate, New Source GP, LLC, filed bankruptcy petitions, which automatically stayed the case as against New Source. (Stipulation and Order, ECF No. 18.) Just shy of three months later, on June 20, 2016, Plaintiffs filed an Amended Class Action Complaint. (ECF No. 19.)

On December 19, 2016, the Court granted Defendants' Motion to Dismiss the Amended Complaint. (Order, ECF No. 37). After further analysis and investigation, Lead Plaintiffs filed a Second Amended Class Action Complaint in January 2017. (ECF No. 38.) Defendants filed two

---

[1] Plaintiffs initially filed this lawsuit in New York Supreme Court. (Notice of Removal, ECF No. 1.) Defendants removed the case to this Court on November 13, 2015. (*Id.*)

motions to dismiss this Second Amended Complaint, (ECF Nos. 40, 43), both of which Plaintiffs opposed. (ECF Nos. 45, 46.)

On June 19, 2017, after approximately one month of arm's-length negotiations, the parties informed the Court that they had reached an agreement and submitted a stipulation of settlement. (ECF No. 52.) On July 27, 2017, the Court preliminarily approved the settlement and approved a Claims Administrator. (ECF No. 57.) The Court preliminarily certified a Class (the "Settlement Class") as follows:

> [A]ll Persons (including, without limitation, their beneficiaries) who purchased Series A Preferred Units of New Source pursuant and/or traceable to its May 5, 2015 public offering prior to the commencement of this action on October 21, 2015.

(Stipulation of Settlement, ECF No. 52 ¶ 1.29; Order, ECF No. 57 ¶ 2.)

The proposed settlement resolves all claims against Individual Defendants Kristian B. Kos, Terry L. Toole, Dikran Tourian, Richard D. Finley, V. Bruce Thompson and John A. Raber, and Underwriter Defendants Stifel, Nicolaus & Company, Inc., Robert W. Baird & Co. Inc., Janney Montgomery Scott LLC, Oppenheimer & Co. Inc., and Wunderlich Securities, Inc. (collectively, the "Settling Defendants"), in exchange for $2.85 million, plus interest. Co-Lead Counsel requested attorneys' fees in the amount of $950,000.00 (representing 33.33% of the settlement amount). The requested fees are 1.24 times the lodestar amount of $763,998.25.

The Court granted final approval of the settlement, the plan of allocation, and the application for attorneys' fees and reimbursement of litigation expenses at the November 20, 2017 Settlement Fairness Hearing, for the reasons that follow.

## II. Certification of the Settlement Class is Appropriate Under Rule 23

Courts in this Circuit may certify a class for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "Classes certified for settlement purposes, like all

other classes, must meet the requirements of Rule 23(a) and at least one of three requirements set forth in Rule 23(b)." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010) (McMahon, J.) (citation omitted).

### A. Requirements of Rule 23(a)

Certification is warranted under Rule 23(a) where, as here,

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.

*Id.*

#### 1. Numerosity

Because there are thousands of class members, the numerosity requirement is satisfied. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").

#### 2. Commonality

"Commonality does not demand that every question of law or fact be common to every class member, but instead merely requires that the claims arise from a common nucleus of operative facts." *Marsh*, 265 F.R.D. at 142. Here, there are questions of law and fact common to the Settlement Class, the most significant of which are whether the Defendants made material misrepresentations or omissions. *See Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (Scheindlin, J.) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

#### 3. Typicality

4

Lead Plaintiffs' claims are typical of the claims of the Settlement Class because they arise from the same allegedly wrongful conduct by the Defendants. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996) (Sweet, J.) ("Rule 23(a)'s typicality requirement is established where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.") (collecting cases).

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." In evaluating adequacy, courts in this Circuit consider, "(1) whether the claims of the lead plaintiffs conflict with those of the class; and (2) whether the lead plaintiffs' counsel is qualified, experienced and generally able to conduct the litigation." *Marsh*, 265 F.R.D. at 143. Lead Plaintiffs and Co-Lead Counsel have fairly and adequately represented the interests of the Settlement Class. First, there is no "divergence of interests" between Lead Plaintiffs and the other Settlement Class Members. *See Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 65 (S.D.N.Y. 2014) (Broderick, J.) (holding that this element of the adequacy requirement is met where "no divergence of interests between Plaintiffs and the other class members has been identified"). Second, Co-Lead Counsel are adequate because they have litigated dozens of class actions in the United States, and "have recouped billions of dollars" in securities class action cases. (Wolf Haldenstein Firm Resume, ECF No. 63-1, at 3; The Rosen Law Firm P.A. Biography, ECF No. 63-2.) Because of their considerable experience, the Court also finds that Rule 23(g) is satisfied. *See D.S. ex rel. S.S. v. New York City Dep't of Educ.*, 255

F.R.D. 59, 74 (E.D.N.Y. 2008) (internal quotation marks and citation omitted) (noting that Rule 23(g) is satisfied where "the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case.").

### B. The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) is satisfied where, as here, "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, questions of law or fact common to Class Members predominate over any questions affecting only individual members, because every Class Member would be required to prove the same misrepresentations in order to establish liability. *See In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002) (Stein, J.) ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws."). A class action is superior to other available methods for fairly and efficiently adjudicating these claims because it spares Plaintiffs costly individual litigation. *See id.* ("Class actions are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually.").

### III. Final Approval of the Settlement

"Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (Pollack, J.) (internal quotation marks and citation omitted). "In a class action settlement, there is a presumption of fairness, reasonableness and adequacy when the settlement is the product of 'arms-length negotiations between experienced, capable counsel after

meaningful discovery." *Marsh*, 265 F.R.D. at 138 (quoting *Sumitomo*, 189 F.R.D. at 280). Adequate notice of the proposed settlement must be provided to potential class members. Fed. R. Civ. P. 23(e)(1).

"A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). To evaluate the settlement's fairness, a court should consider "both the settlement's terms and the negotiating process leading to settlement." *Id.* (internal quotation marks and citation omitted).

### A. Adequacy of Notice

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." "A notice program must provide the 'best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) (McMahon, J.). If the average class member understands "the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings," then the notice is adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (alteration in original) (internal quotation marks and citation omitted).

The Court's July 27, 2017 Preliminary Approval Order appointed a claims administrator who sent notice of the settlement to potential Class Members. Notice was mailed to over 2,200 potential class members and nominees and over 1,400 banks, brokerage companies, mutual funds, insurance companies, pension funds, and money managers; published in Investor's Business Daily; transmitted over Globe Newswire; and transmitted to the Depository Trust Company for publication on the Legal Notice System. The notice provided:

7

(i) an explanation of the Action;

(ii) the definition of the settlement class;

(iii) the amount of the settlement and the reasons for it;

(iv) the plan of allocation;

(v) an approximation of the attorneys' fees and costs to be requested;

(vi) an explanation of the right to opt-out or object; and

(vii) an explanation of the binding effect of the Court's judgment on the Class Members.

The Court finds that notice was adequate. *See Weinberger*, 698 F.2d at 70.

### B. Procedural Fairness

When settlement is achieved through arm's-length negotiations, between experienced and capable counsel, after meaningful discovery, a "presumption of fairness, adequacy, and reasonableness" will apply to the class settlement. *Wal-Mart*, 396 F.3d at 116 (internal quotation marks and citation omitted). In this case, the parties engaged in protracted, arm's-length negotiations between experienced counsel, who were well-versed in the strengths and weaknesses of the case. Thus, the Court finds the settlement to have been achieved through a fair and reasonable process.

### C. Substantive Fairness

Courts in this Circuit examine the following nine factors to determine whether a settlement is fair, adequate, and reasonable:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*") (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Reserves, Inc.*, 209 F.3d 43 (2d Cir. 2000); *Marsh*, 265 F.R.D. at 138. A court may consider the totality of the factors "in light of the particular circumstances." *In re Merrill Lynch & Co.*, 02-MDL-1484, 2007 WL 313474, at *9 (S.D.N.Y Feb. 1, 2007) (Keenan, J) (citation and internal quotation marks omitted).

### 1. Complexity, Expense, and Likely Duration of the Litigation

Further litigation would have required substantial additional expenditures of time and money, including discovery, further motion practice, trial, and appeal. *See Sumitomo*, 189 F.R.D. at 281 (holding that this element was satisfied in a class action suit, and noting that "class action suits in general have a well-deserved reputation as being most complex," and are "notably difficult and notoriously uncertain") (internal quotations and citations omitted). Thus, this factor supports approval of the settlement.

### 2. Reaction of the Class to the Settlement

The claims administrator distributed notice to thousands of potential class members. Two class members submitted requests to be excluded from the settlement agreement. Three class members (.1% of the 2,283 class members notified), Sherman

9

Brathwaite, Michael L. Sklar, and Thomas M. Bloom, submitted timely objections to the settlement. None of the three objectors attended the Settlement Fairness Hearing. The small number of objectors weighs in favor of final approval. *See Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22–23 (2d Cir. 1987) (holding that district court did not abuse discretion in approving class settlement where 36% of class objected to the amount of the settlement); *United States v. City of New York*, No. 07-CV-2067, 2015 WL 1063403, at *14 (E.D.N.Y. Mar. 11, 2015) (weighing reaction of class in favor of final approval where "only 6.7% of eligible claimants (98 out of 1,470), a relatively small percentage, have in fact objected").

The substantive points made by the objectors are without merit, as described below.

Mr. Brathwaite explicitly did not "object to the case as a whole." (Bravata Decl., ECF No. 64, Ex. E.) Mr. Brathwaite stated that he simply wanted his "money back, just as others are about to get their money back." (*Id.*) The Claims Administrator subsequently contacted Mr. Brathwaite, who suffered no "recognized losses" because Mr. Brathwaite purchased units only "after the last corrective disclosure of September 30, 2015." (Suppl. Bravata Decl., ECF No. 68-1, at 2–3.) Mr. Brathwaite's objection is thus meritless.

Mr. Sklar raised three arguments. First, Mr. Sklar argued that the "investors' loss was caused by possible fraud, actionable carelessness or breach of duty, or a combination of all three." (Sklar Obj. at 1–3.) But Mr. Sklar provided no facts supporting a cause of action not already the subject of this lawsuit. In fact, Co-Lead Counsel vigorously and thoroughly litigated this case, yet chose not to assert the additional claims mentioned by

10

Mr. Sklar. The Court rejects this argument as factually unsupported and conclusory. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 168 (S.D.N.Y. 2007) (Keenan, J.) ("These conclusory statements are not sufficient to weigh against approval of the Settlement as fair and reasonable."). Second, Mr. Sklar argued that the settlement is "inadequate." The Court disagrees. $2.85 million is an adequate settlement, particularly when taking into account the costs and risks Plaintiffs faced in litigating this case. Third, Mr. Sklar argued that the "underwriters and professionals are financially strong and insured and the company's principals appear to be people of means," so these Defendants "should be held accountable and fund a more generous settlement." (Sklar Obj. at 3–4.) But as discussed below, although the Settling Defendants may have been able to withstand a larger settlement, that fact alone does not render the settlement unfair. Mr. Sklar's objection is thus overruled.

Finally, Mr. Bloom objects to the settlement as a "scam," and "the equivalent of robbery," and argues that "[p]eople should be jailed and victims should be paid in excess of their losses." The Court overrules Mr. Bloom's objection as conclusory and unsupported. *See Merrill Lynch*, 246 F.R.D. at 168.

### 3. Stage of the Proceedings and Amount of Discovery Completed

Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the oil and gas industry. The Court finds that Lead Plaintiffs were well-informed to "gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and*

*"ERISA" Litig.*, No. 02-CV-5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (Kram, J.).

### 4. Risks of Continued Litigation

A court must also consider the likelihood that the class would prevail at trial when determining the reasonableness, fairness, and adequacy of settlement. Specifically, a court should consider "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463. First, as to liability, Plaintiffs faced difficulty proving materiality. In fact, Plaintiffs' prior complaint was dismissed for not adequately pleading materiality. (Order, ECF No. 37, at 13–17.) Second, as to damages, Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses, rather than other market factors. For example, Plaintiffs may have had difficulty proving that the stock price decline on September 28, 2015 was caused by Defendants' misrepresentations. Finally, as to maintaining the class action through trial, certification was never briefed and Defendants could have moved to decertify the class at any time. The "process of class certification would have subjected Plaintiffs to considerably more risk." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12. Accordingly, this factor weighs in favor of final approval.

### 5. Ability of the Defendants to Withstand a Greater Judgment

Although Defendants may have had the ability to withstand a greater judgment, this factor does not render the settlement unfair, given the force of the other *Grinnell* factors.

### 6. Range of Reasonableness in Light of Best Possible Recovery and All Attendant Risks of Litigation

Co-Lead Plaintiffs estimate that the maximum recoverable damages would be approximately $44,000,000. The $2,850,000 settlement represents 6.5% of the maximum recoverable damages. This settlement amount is reasonable and in line with other settlements in securities class actions. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162-63 (S.D.N.Y. 2011) (Engelmayer, J.) ("[T]he average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses.") (citation omitted).

In sum, the *Grinnell* factors support the Court's approval of this settlement as fair, reasonable, and adequate.

### D. Plan of Allocation

The Court approves the parties' Plan of Allocation, which apportions the settlement proceeds based on each claimant's respective market loss, based on the timing of purchases and sales. The Plan of Allocation was formulated by Co-Lead Counsel in consultation with a damages expert. The Court deems the Plan of Allocation to be fair, reasonable, and adequate.

### IV. Approval of Attorneys' Fees and Reimbursements

Co-Lead Counsel request a fee award of $950,000, representing 33.33% (1/3) of the $2,850,000 settlement fund. Co-Lead Counsel also request (i) reimbursement of litigation expenses in the amount of $28,300.84, and (ii) reimbursement of litigation costs for each of the three Lead Plaintiffs, in the total amount of $15,000 ($5,000 for each Lead Plaintiff).

"[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class . . . the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund."

13

*Goldberger*, 209 F.3d at 47 (citations omitted). District courts in this Circuit typically award fees to plaintiffs' counsel in a class action using either the "percentage" method or the "lodestar" method:

> Under the percentage method, the fee is calculated simply as a percentage of the recovery. Under the "lodestar" method, the court determines the lodestar—that is, the number of hours reasonably expended on the case multiplied by the appropriate hourly rates—based on submissions from counsel regarding the work they performed. This lodestar is then adjusted, usually upward (by a "multiplier"), to arrive at the appropriate fee award for the case.

*Marsh*, 265 F.R.D. at 146. Courts in this Circuit typically use the percentage method, though a court may use either method at its discretion. *Id.* "Regardless of which method is used, several factors identified by the Second Circuit in *Goldberger* (the "*Goldberger factors*") . . . ultimately determine what is a reasonable fee." *Id.*

Given the circumstances in this case, counsel's request for attorneys' fees totaling 33.33% of the recovered funds is reasonable under *Goldberger*, as more fully discussed below.

### A. *Goldberger* Factors to Assess Reasonableness of Attorneys' Fees

Attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger*, 209 F.3d at 47. Co-Lead Counsel have created a "common fund" of $2,850,000 in the form of a settlement award for the Class. In this Circuit, courts weigh the *Goldberger* factors to determine whether attorneys' fees are reasonable:

1. "the time and labor expended by counsel";
2. "the magnitude and complexities of the litigation";
3. "the risk of the litigation";
4. "the quality of representation";
5. "the requested fee in relation to settlement"; and
6. "public policy considerations."

*Wal-Mart*, 396 F.3d at 121–22 (citing *Goldberger*, 209 F.3d at 50).

### 1. Time and Labor Expended by Counsel: the Lodestar

Co-Lead Counsel have billed 1,124.50 hours to this litigation and Plaintiffs' counsel have collectively billed 1,224.80 hours,[2] including for the following tasks:

i.   Investigating facts and interviewing knowledgeable individuals;

ii.  Drafting a Complaint, Amended Complaint, and Second Amended Complaint;

iii. Drafting opposition briefs to Defendants' motions to dismiss the Amended Complaint and the Second Amended Complaint;

iv.  Consulting with experts on damages and the oil industry; and

v.   Negotiating and finalizing a settlement.

The Court has reviewed the billing records documenting these hours and finds them to be reasonable. The total lodestar value of Plaintiffs' counsel's work is $763,998.25. (Harrar Decl., ECF No. 63 ¶ 28.) Plaintiffs' counsel are requesting $950,000, which would result from a lodestar multiplier of 1.24. A multiplier of 1.24 is within the range of lodestar multipliers approved in this Circuit for cases with settlement amounts under $10 million. *See, e.g., In re China Sunergy Sec. Litig.*, No. 07-CV-7895, 2011 WL 1899715, at *2, *6 (S.D.N.Y. May 13, 2011) (Batts, J.) (awarding 33 1/3% of $1,050,000 settlement and approving a lodestar multiplier of 1.41). Thus, this factor supports the requested fee.

---

[2] Criden & Love, P.A., and Nussbaum Law Group, P.C., collectively billed 100.3 hours representing Plaintiffs in this litigation. (Suppl. Harrar Decl., ECF No. 66.) Most of this time was billed while initially investigating the case and preparing a first draft of a complaint before referring the case to Co-Lead Counsel. (*Id.* ¶ 4.)

15

## 2. Magnitude and Complexity of the Litigation

Securities class actions are "notably difficult and notoriously uncertain." *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (Pollack, J.) (internal quotation marks omitted). Investigating and litigating this action was complex and required consultation with experts. Thus, this factor also supports the requested fee.

## 3. Risk of the Litigation

The risk of the litigation is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *16 (internal quotation marks omitted). Specifically with respect to contingency fee cases, like this one, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470.

Plaintiffs also faced significant difficulties in this litigation. The Court previously dismissed the Amended Complaint. Plaintiffs continued to face difficulty in proving materiality. Plaintiffs faced a significant risk of recovering nothing from Defendants. This factor also supports the requested fee.

## 4. Quality of Representation

The Court has reviewed the backgrounds of the attorneys working for the class. Counsel all have ample experience in class action litigation. Co-Lead Counsel vigorously investigated and prosecuted the case. The high quality of the representation supports the requested fee.

## 5. Requested Fee in Relation to Settlement

Lead Counsel requests $950,000, or 33.33% of the Settlement Fund of $2.85 million. This percentage is within the range of what is reasonably granted in this Circuit. *See, e.g., In re*

16

*China Sunergy Sec. Litig.*, 2011 WL 1899715, at *2, *6 (awarding 33 1/3% of $1,050,000 settlement). Thus, this factor also supports the requested fee.

### 6. Public Policy Considerations

"Public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *Merrill Lynch*, 2007 WL 313474, at *21. Thus, this factor also supports the requested fee.

### B. Reaction of the Settlement Class

The Class Members received notice that Lead Counsel would apply for attorneys' fees not to exceed 33.33% of the settlement fund. The fact that no class members have explicitly objected to these attorneys' fees supports their award.[3] *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *10–12 (S.D.N.Y. Nov. 9, 2015) (Sweet, J.) (holding that attorneys' fees of 33% of the settlement fund were reasonable despite objections from two class members that the fees were too high), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).

### C. Reimbursement of Litigation Expenses

Counsel have requested reimbursement of $28,300.84 in litigation expenses. The bulk of these expenses ($22,271.62) went toward Plaintiffs' experts and consultants, and toward investigator fees. Notice to the Class stated that the expense reimbursement request would not exceed $35,000, and there have been no objections to this request. The Court has reviewed these expenses and finds them to be reasonable.

---

[3] Mr. Sklar included in his objection a faint suggestion that the requested fees are too high because Class Members "will receive a paltry 5% of their investment net of disclosed costs and expenses." (Sklar Obj. at 3.) Although this could be construed as an objection to the requested attorneys' fees, this argument is conclusory and without merit.

### D. Litigation Expenses for Named Plaintiffs

Lead Counsel has requested a total of $15,000 in litigation costs and expenses for the three Lead Plaintiffs—that is, $5,000 to each Lead Plaintiff. The notice provided to class members stated that the Lead Plaintiffs could receive this amount and type of award. Litigation costs and expenses are warranted for these Lead Plaintiffs because they assisted in the litigation communicating with counsel, reviewing pleadings, and monitoring settlement negotiations. (*See* Vaccaro Decl., ECF No. 66-3; Slater Decl., ECF No. 67-2; Deneen Decl., ECF No. 67-3.)

### V. Conclusion

For the foregoing reasons, the Court GRANTED in full the Approval Motion and the Attorneys' Fees Motion. This resolves ECF Nos. 59 and 61.

SO ORDERED.

Dated: New York, NY
December 14, 2017

12-14-17

*[signature: Kimba M. Wood]*

KIMBA M. WOOD
United States District Judge

18